690 So.2d 603 (1997)
PROCACCI COMMERCIAL REALTY, INC., as General Partner of Procacci Financial Group, Ltd., Appellant/Cross-Appellee,
v.
DEPARTMENT OF HEALTH AND REHABILITATIVE SERVICES, Appellees/Cross-Appellant, and
BDC Deland, Ltd., Appellee.
No. 95-3317.
District Court of Appeal of Florida, First District.
January 22, 1997.
Rehearing Denied February 12, 1997.
*604 Alexander D. Varkas, Jr., and Robert A. Sweetapple of Sweetapple, Broeker & Varkas, Boca Raton, for Appellant/Cross-Appellee.
Ellen D. Phillips, Assistant District Legal Counsel, and Daniel T. Medved, District Legal Counsel, Daytona Beach, for Appellee/Cross-Appellant Department of Health and Rehabilitative Services.
Robert W. Morrison of Allen, Lang, Morrison & Curotto, P.A., Orlando, for Appellee BDC Deland, Ltd.

ON MOTION FOR REHEARING OF ORDER GRANTING ATTORNEYS' FEES
BENTON, Judge.
A motionappellant's motion for rehearing of court's order of September 23, 1996 awarding attorneys' fees and costs to the *605 State of Florida, Department of Health and Rehabilitative Services and BDC Deland, Ltd. pursuant to Section 120.57(1)(b)(10), Florida Statutesasks that we vacate our order awarding fees and costs,[1] contending that the main "appeal raised ... the same issues of fact and issues of law litigated before the Hearing Officer,[[2]]" who found them not to be frivolous. In its reply to motion for rehearing, the Department responds:
Irrespective of the legitimacy of Appellant's factual disputes below, Appellant raised no colorable issue disputing the findings of the Hearing Officer below, but, rather, consistently misrepresented the testimony without regard to the record. Further, Appellant failed to acknowledge well-established caselaw controlling the standards of review in bid protest cases. Appellant did not even cite controlling Supreme Court precedent, citing, rather, lower court cases which were subsequently reversed.
The reply to motion for rehearing also "reassert[ed] the essentially frivolous nature of the litigation below," a bid dispute proceeding which Procacci Commercial Realty, Inc. (Procacci) initiated by filing a protest when the Department of Health and Rehabilitative Services[3] (HRS) announced its intention to lease office space from BDC Deland, Ltd. (BDC) instead of from Procacci. We see no reason to vacate the order[4] awarding fees and costs, but take this opportunity to clarify the scope of the award.
On the main appeal, HRS's final order, entered on August 25, 1995, was affirmed without opinion. Procacci Commercial Realty, Inc. v. Department of Health and Rehabilitative Servs., No. 95-3317 (Fla. 1st DCA Sept. 23, 1996). The final order adopted a recommended order entered on July 7, 1995, including the recommendation that Procacci's formal written protest be dismissed. The final order also purported[5] to adopt the administrative law judge's "order correcting order" entered on July 24, 1995, *606 which denied attorney's fees HRS sought under section 120.57(1)(b)5., Florida Statutes (1995).

Bid Protest
HRS's invitation to bid (lease number 590:2438) seeking space for HRS offices in Deland specified that bidders provide 140 reserved parking spaces for HRS's exclusive use.[6] As part of their bids, bidders were to supply a scaled site drawing showing the layout of buildings and the location and configuration of parking spaces to be allocated to the Department, along with a letter certifying that the prospective lessor agreed to supply 140 parking spaces on site, stating the number of "parking spaces per sq. ft. of [floor] space," and specifying the number of parking spaces assigned to other tenants, if any. HRS expressly reserved the right to seek clarification or to waive non-material deviations from technical requirements of the bid.[7]
BDC proposed to lease HRS some 18,000 square feet in Woodland Plaza, a shopping *607 center BDC was renovating. Procacci's formal written protest asserted that BDC's bid was nonresponsive to the invitation to bid in that:
1. In order to comply with the terms of the bid, the bidder was required to prove 140 exclusive parking spaces for the benefit o[f] HRS. In order to do so, Dan Paris, BDC DeLand, Ltd. would be required to provide 897 spaces at the site. In its bid, Dan Paris incorrectly stated that only 840 spaces were needed in order to provide compliance with the code and in order to provide the 140 exclusive spaces required in the invitation to bid. The Dan Paris bid represented that 980 spaces are available in the subject parking space. The plan reveals, however, that only 937 spaces are available. In addition, in excess of 50 of these spaces are not to code standards. Therefore, Dan Paris has not and cannot provide adequate parking to meet the requirements of the bid.
2. Separate and apart of [sic] the above, the bid of Dan Paris shows two areas that are reserved for future out-parcel development. As a matter of law, this space may not be included in calculation of the parking since it is reserved for other uses. In excess of 150 spaces are located in this area, separately rendering the bid non-responsible [sic] with regard to the parking requirement.
Evidence showed BDC had rented only 66,000 of the 168,000 gross square feet in Woodland Plaza, and that there would have been adequate parking on site even if all 168,000 gross square feet in Woodland Plaza had been occupied.
The recommended order found that a local zoning official had determined that BDC "had enough space on site to provide parking spaces complying with local codes for HRS, current tenants and future tenants." As alleged, BDC's site plan included two boxes in the area representing the parking lot, each labeled "future out-parcel." But the evidence showed that BDC owned the entire site and had not contracted to sell any of it; and that the City of Deland would not permit use of the potential "future out-parcels," except for parking, without prior approval. Such approval would, the evidence showed, entail meeting all code requirements, including making provision for adequate green space and parking.
The parking lot at Woodland Plaza was much bigger than necessary to provide HRS exclusive use of 140 legal and conforming parking spaces on site, without compromising or infringing upon parking spaces available for the other tenants, none of whom had assigned parking. Indeed, Procacci conceded that there was enough parking, at the time bids were submitted and at the time of the hearing, claiming only that problems would arise in the future. The questions Procacci raised about the future were all decided adversely to Procacci's position, however. Unequivocal findings were amply supported by competent evidence in this regard.

Sanctions Sought Below
Within two weeks of Procacci's formal written protest, see Stockman v. Downs, 573 So.2d 835 (Fla.1991), HRS filed a motion to dismiss/petition for attorney's fee, damages, and costs in which it alleged:
The Department is entitled to attorneys fees, damages, and costs pursuant to Section 120.57(1)(b)(5), in that the protest is filed to harass the Department and cause unnecessary delay in removing to the new leased facility, requiring the Department to remain in facilities currently leased from Procacci at a cost to the Department in Excess of $4000. per month, and resulting in unjust enrichment to Procacci.
Former section 120.57(1)(b)5. and its successor, section 120.569(2), Florida Statutes (Supp.1996), authorize attorney's fee awards in administrative proceedings,[8] if a pleading *608 is filed for "an improper purpose." But the hearing officer found no improper purpose.[9]
Since HRS never appealed the administrative law judge's determination that Procacci did not file its formal written protest for improper purposes, the propriety of that ruling is not a question we have for decision on appeal. The "order correcting order" denying fees under former section 120.57(1)(b)5. must stand. But Procacci goes further and argues that the administrative law judge's determination under former section 120.57(1)(b)5. precludes the award of attorneys' fees under section 120.57(1)(b)10., Florida Statutes (1995). We reject this contention. Two distinct questions are involved. They require separate consideration and discrete resolution.

Frivolous Appeal Warrants Award of Fees
An appellate court "may award reasonable attorney's fees and [reasonable] costs to the prevailing party if the court finds that the appeal was frivolous, meritless, or an abuse of the appellate process." § 120.57(1)(b)10., Fla.Stat. (1995). This language[10] authorizes an award in favor of an administrative agency. See RHPC, Inc. v. Dep't of Health and Rehabilitative Services, 509 So.2d 1267 (Fla. 1st DCA 1987). Because Procacci's bid protest raised "a disputed issue of material fact, [HRS] ... refer[red] the protest to the division for proceedings under s. 120.57(1)." § 120.53(5)(d)2., Fla.Stat. (1995). With entry of the recommended order, HRS regained jurisdiction of the bid dispute and *609 entered the final order.[11] As appellee defending its order on appeal, HRS was a prevailing party just as BDC was.
In Treat v. State ex rel. Mitton, 121 Fla. 509, 510-11, 163 So. 883, 883-84 (1935), our supreme court defined a frivolous appeal:
A frivolous appeal is not merely one that is likely to be unsuccessful. It is one that is so readily recognizable as devoid of merit on the face of the record that there is little, if any, prospect whatsoever that it can ever succeed. See Hopkinson v. Kennedy, 225 Mass. 231, 114 N.E. 204 [1916]. It must be one so clearly untenable, or the insufficiency of which is so manifest on a bare inspection of the record and assignments of error [or briefs, in keeping with modern practice], that its character may be determined without argument or research. An appeal is not frivolous where a substantial justiciable question can be spelled out of it, or from any part of it, even though such question is unlikely to be decided other than as the lower court decided it, i.e., against appellant or plaintiff in error.
(Footnote omitted.) The manifest insufficiency of the appeal Procacci brought in this case is paradigmatic.
In light of the administrative law judge's adverse and fully supported fact findings, Procacci's catchall contention that HRS's decision to lease space from another landlord (at less cost, in order to save taxpayers' money) was "arbitrary and capricious" wholly lacked merit. Rehashing the asserted unavailability of an "island"in a virtual sea of parking spaceson which HRS employees could park their cars was an abuse of the appellate process. Procacci's only other point on appealthe contention that the five or six pages of the final order devoted to a discussion of the thirteen exceptions Procacci took to the recommended order lacked adequate detailhad no more merit than the contention that HRS acted arbitrarily and capriciously. The appeal taken by Procacci was "frivolous, meritless, or an abuse of the appellate process." Both HRS and BDC are entitled[12] to be reimbursed for reasonable attorneys' fees occasioned by the appeal. Here, as in Branch v. Charlotte County, 627 So.2d 577, 579 (Fla. 2d DCA 1993), the appellant's principal strategy has been to "reargue[] the facts previously presented to the lower [tribunal]."
We remand to the Division of Administration Hearings for a determination of the amount of fees and costs. See, e.g., University Community Hosp. v. Dep't of Health and Rehabilitative Servs., 493 So.2d 2 (Fla. 2d DCA 1986). Unless the parties can agree on the amount of fees and costs, evidence has to be taken on these questions. See Dep't of Admin., Office of State Employees' Ins. v. Ganson, 566 So.2d 791 (Fla.1990). Entitlement is limited to fees and costs reasonably incurred by appellees in defending the appeal. While awards against an agency may in appropriate circumstances encompass fees and costs "for the administrative proceeding and the appellate proceeding," § 120.595(5), Fla.Stat. (Supp.1996), see Titzel v. Department of Prof'l Regulation, Bd. of Prof'l Eng'rs, 599 So.2d 279 (Fla. 1st DCA 1992); Johnston v. Department of Prof'l Regulation, Bd. of Med. Exam'rs, 456 So.2d 939 (Fla. 1st *610 DCA 1984), neither former section 120.57(1)(b)10. nor its successor authorizes an award against a private party for costs or fees incurred in the administrative proceedings from which the appeal is taken.
Appellant's motion for rehearing of court's order of September 23, 1996 awarding attorneys' fees and costs to the State of Florida, Department of Health and Rehabilitative Services and BDC Deland, Ltd. pursuant to section 120.57(1)(b)(10), Florida Statutes, is denied.
ERVIN and KAHN, JJ., concur.
NOTES
[1] Although we granted appellees' motions for fees and costs, the award of costs is automatic under Florida Rule of Appellate Procedure 9.400(a), which provides that costs "shall be taxed in favor of the prevailing party unless the court orders otherwise." Schoettle v. State, Dep't of Admin., Div. of Retirement, 522 So.2d 962 (Fla. 1st DCA 1988).
[2] On October 1, 1996, hearing officers of the Division of Administrative Hearings became "administrative law judges." Ch. 96-159, § 31, at 199, Laws of Fla.
[3] As recently amended, section 20.19, Florida Statutes (Supp.1996), redesignates the Department of Health and Rehabilitative Services as the Department of Children and Family Services. Ch. 96-403, § 5, at 2645, Laws of Fla. Certain powers, duties, and sanctions of the former Department of Health and Rehabilitative Services are transferred to the newly created Department of Health. Ch. 96-403, §§ 6, 8 at 2675-76, Laws of Fla. The Division of Statutory Revision of the Joint Legislative Management Committee has also been directed to:

prepare a reviser's bill for introduction at a subsequent session of the Legislature to change "Department of Health and Rehabilitative Services" to "Department of Children and Family Services," wherever that term appears in chapters 39, 63, 410, 411, 414, 415, and 419, Florida Statutes, and ss. 409.016-409.803, Florida Statutes; to change "Department of Health and Rehabilitative Services" to "Department of Health," wherever the term appears in chapters 153, 154, 381, 382, 383, 384, 385, 386, 387, 388, 390, 391, and 392, Florida Statutes; to change "county public health unit" to "county health department" wherever the term appears in Florida Statutes; and to make such further changes as are necessary to conform the Florida Statutes to the organizational changes effected by this act.
Ch. 96-403, § 26, at 2691, Laws of Fla.
[4] The body of the order entered on September 23, 1996, reads:

The State of Florida, Department of Health and Rehabilitative Services' and BDC Deland Ltd.'s motions for attorney's fees and costs, filed pursuant to section 120.57(1)(b)(10), Florida Statutes, are granted. The hearing officer is directed to set an appropriate amount of attorney's fees to be awarded to the Department of Health and Rehabilitative Services and BDC Deland Ltd.
Procacci Commercial Realty, Inc.'s motion for attorney's fees is denied.
Although the rehearing motion concludes with a prayer that the entire September 23, 1996, order be vacated, it does not specifically question denial of Procacci's motion for attorney's fees.
[5] In Department of Health & Rehabilitative Services v. S.G., 613 So.2d 1380 (Fla. 1st DCA 1993), we held that, when a recommended order reserves jurisdiction to determine the amount of fees and costs to be assessed against the agency, the agency cannot employ its final order authority to overturn by fiat an award of attorneys' fees and costs entered against it under former section 120.57(1)(b)5. See Florida Audubon Soc'y v. Remington, 12 F.A.L.R. 3400 (Fla. Dept. of Environmental Protection 1990). Here HRS had no jurisdiction to review the hearing officer's ruling refusing to award sanctions it sought against Procacci.

Whether denominated interlocutory or final, an order awarding costs and fees under former section 120.57(1)(b)5. or current section 120.569(2)(c) is reviewable only in an appropriate appellate court. Both provisions authorize sanctions for papers filed for improper purposes. Such sanctions may require reimbursement of fees and costs incurred by any injured party and may be imposed against governmental and private parties alike.
Neither HRS nor any other agency has authority to review fee and cost awards that administrative law judges make under the authority of section 120.569(2)(c), Florida Statutes (Supp.1996), or which hearing officers made under the predecessor provision, section 120.57(1)(b)5., Florida Statutes (1995). Only an administrative law judge or a hearing officer had authority to make awards under these provisions. Chipola Basin Protective Group, Inc. v. State, Dep't of Envtl. Regulation, 11 F.A.L.R. 467 (Fla. Dept. of Environmental Protection 1988). A referring agencyitself ordinarily a litigantcan neither make nor reverse such awards.
[6] The invitation to bid included the following specifications concerning parking spaces:

[Section] 11: As part of the bid submittal, bidders are to provide:
. . . .
(d) A scaled site layout showing present location of building(s), location, configuration and number of parking spaces assigned to the department, access and egress routes and proposed changes. This is to be drawn to scale. Final site layout will be a joint effort between the department and lessor to best meet the needs of the department.
. . . .
[Section] 21: Parking:
For this facility the department has determined that a minimum of 140 parking spaces are required to meet its needs. This parking is to be under the control of the bidder, off street, suitably paved and lined. This parking is to be provided as part of the lease cost to the department.
Lessor will grant to the Lessee an exclusive right to use 140 parking spaces. Lessor shall submit with this Bid Submittal a letter certifying that the Lessor agrees to the requested number of parking spaces on site, states the number of parking spaces per sq. ft. of space as required by the local zoning jurisdiction and provides a site plan of the parking lot identifying the number of parking spaces assigned to specific other tenants. The purpose of this submittal is to assure parking spaces conform to local jurisdiction requirements of number and size, and that the number of parking spaces requested in this invitation can be achieved without infringing on or combining with the parking requirement of other tenants.
. . . .
BIDDER RESPONSE: PARKING BEING BID
__ Exclusive spaces available on site.
__ Non-exclusive spaces available on site.
__ Exclusive spaces off site located from the proposed facility.
___ (Distance)
Bidder must provide recent evidence of control of all parking spaces being proposed. Permission to park is not control.
At a mandatory pre-bid conference, the Department of Health and Rehabilitative Services had informed all bidders that the intent of the certifying letter in section 21 was to ensure the parking area was under the bidder's control and that the bidder had the ability to perform the terms of the contract.
[7] "Although a bid containing a material variance is unacceptable, not every deviation from the invitation is material." Robinson Elec. Co. v. Dade County, 417 So.2d 1032, 1034 (Fla. 3d DCA 1982); Tropabest Foods, Inc. v. State, Dep't of Gen. Servs., 493 So.2d 50, 52 (Fla. 1st DCA 1986) (citation omitted); Glatstein v. Miami, 399 So.2d 1005 (Fla. 3d DCA) review denied, 407 So.2d 1102 (Fla.1981). "It is only material if it gives the bidder a substantial advantage over the other bidders and thereby restricts or stifles competition." Tropabest, 493 So.2d at 52; Harry Pepper & Assocs., Inc. v. City of Cape Coral, 352 So.2d 1190, 1193 (Fla. 2d DCA 1977).
[8] Asserting the complete lack of a justiciable issue, HRS also invoked section 57.105, Florida Statutes, as a basis for the award of attorney's fees it sought from the administrative law judge (as he is now known). But section 57.105 only applies to judicial proceedings. In the circumstances section 57.105 specifies, it authorizes a "court [to] award a ... fee ... in any civil action." Cf. City of Naples Airport Auth. v. Collier Dev. Corp., 515 So.2d 1058, 1059 (Fla. 2d DCA 1987)("[S]ection 57.041 provides for costs in judicial actions only."). See generally Farzad v. Department of Prof'l Regulation, 443 So.2d 373 (Fla. 1st DCA 1983); Landes v. Department of Prof'l Regulation, 441 So.2d 686 (Fla. 2d DCA 1983), review denied, 451 So.2d 849 (Fla.1984); and Donaldson v. State, Dep't of Health and Rehabilitative Servs., 425 So.2d 145 (Fla. 1st DCA 1983).
[9] The statutory examples of improper purpose are "to harass or to cause unnecessary delay or for frivolous purpose or needless increase in the cost of litigation." Federal Rule of Civil Procedure 11 was a model of sorts for former section 120.57(1)(b)5., but there are differences, as pointed out in Mercedes Lighting and Electrical Supply, Inc. v. State, Department of General Services, 560 So.2d 272, 277 (Fla. 1st DCA 1990).

The signature requirement under rule 11 is directed at three substantive prongs: the factual basis of the paper, the legal basis of the paper, and its legitimate purpose. Under the statute, the signature certifies only that the paper is not interposed for an improper purpose. But, unlike the rule, section 120.57(1)(b)5. includes "frivolous purpose" as an example of "improper purpose."
560 So.2d at 277 (citation omitted). Eschewing a subjective good faith-bad faith test, see Rodgers v. Lincoln Towing Serv., Inc., 771 F.2d 194 (7th Cir.1985), the Mercedes court concluded that a finding of improper purpose could not stand "if a reasonably clear legal justification can be shown for the filing of the paper." 560 So.2d at 278.
The use of an objective standard creates a requirement to make reasonable inquiry regarding pertinent facts and applicable law. In the absence of "direct evidence of the party's and counsel's state of mind, we must examine the circumstantial evidence at hand and ask, objectively, whether an ordinary person standing in the party's or counsel's shoes would have prosecuted the claim." Pelletier v. Zweifel, 921 F.2d 1465, 1515 (11th Cir.1991). Federal cases applying an objective standard to determine improper purpose include Donaldson v. Clark, 819 F.2d 1551 (11th Cir.1987); Eastway Construction Corp. v. City of New York, 762 F.2d 243 (2d Cir.1985); Ginther v. Texas Commerce Bank, N.A., 111 F.R.D. 615 (S.D.Tex.1986); and Andre v. Merrill Lynch Ready Assets Trust, 97 F.R.D. 699 (S.D.N.Y.1983).
An administrative complaint found not to be supported by a permissible interpretation of applicable statutes and rules was held to have been filed for an "improper purpose," despite "an absence of frivolousness," in Good Samaritan Hospital v. Department of Health and Rehabilitative Services, 582 So.2d 722, 723 (Fla. 4th DCA 1991). On the other hand, in Cubic Western Data v. Department of Transportation (No. 89-6926BID, DOAH, Jan. 25, 1990), the hearing officer foundrightly or wronglyno improper purpose in a bid protest filed by a bidder who had earlier agreed with the department's determination that its bid was nonresponsive. Former section 120.57(1)(b)5. has been said to "include[] the parties' qualified representative in the requirement that the pleading, motion or other paper be signed but does not address the consequences for failure to sign, whereas rule 11 provides for striking an unsigned pleading." Mercedes Lighting, 560 So.2d at 277 n. 4.
[10] The same language now appears in section 120.595(5), Florida Statutes (Supp.1996). In the current version, the word "reasonable" precedes the word "costs." As to the award of appellate costs, see ante, n. 1.
[11] In section 120.57 substantial interest proceedings, the referring agency enters the final order and has no right (nor any need) to appeal its own order. Only other parties can appeal. Since it is private parties (ormuch less frequentlygovernmental litigants other than the referring agency) who initiate appeals, awards on the basis of frivolous appeals from agency orders will generally be against private parties, as in the present case. Where a third party is aligned with the agency whose order is appealed, fee awards may be entered in favor both of the agency and of the party aligned with the agencyhere BDC.
[12] We recognize that former section 120.57(1)(b)10. is discretionary, unlike section 57.105, Florida Statutes (1995), which is mandatory. "We remind trial judges and the bar that our legislature said in section 57.105 that courts `shall' assess attorney's fees for the bringing of frivolous litigation." Sykes v. St. Andrews Sch., 625 So.2d 1317, 1319 (Fla. 4th DCA 1993)(appellate attorney's fees awarded where party did not abandon appeal after supreme court resolved sole justiciable issue). Where a suit is "completely devoid of a justiciable issue of either law or fact ... the statute's mandatory provision is operative and requires an award of a reasonable attorney's fee." Galbraith v. Inglese, 402 So.2d 574, 574 (Fla. 4th DCA 1981).