946 So.2d 66 (2006)
Gabriel Dean WALKER, individually and as guardian for his minor child Gabriel Alexander Walker, Appellant,
v.
CASH REGISTER AUTO INSURANCE OF LEON COUNTY, INC., Appellee.
No. 1D05-4321.
District Court of Appeal of Florida, First District.
December 22, 2006.
*67 James Garrity of Marie A. Mattox, P.A., Tallahassee, for Appellant.
Patrick A. Raley and Jed Berman of Infantino and Berman, Winter Park, for Appellee.
VAN NORTWICK, J.
Gabriel Dean Walker appeals an order awarding attorney's fees and costs to Cash Register Auto Insurance of Leon County, Inc., pursuant to section 57.105, Florida Statutes, and 42 U.S.C.1988(c). For the reasons that follow, we reverse in part, affirm in part, and certify conflict with Maxwell Building Corp. v. Euro Concepts, LLC, 874 So.2d 709 (Fla. 4th DCA 2004).

Factual and Procedural Background
Walker filed suit against Cash Register Auto Insurance, Inc. (Cash Register), after he was denied permission to take his two-year-old son into Cash Register's restroom. Walker was at the Cash Register offices to purchase insurance, and, when he asked for access to the restroom, he was told that members of the public, including customers, were not permitted access to the restroom. Walker was told to find a restroom at a neighboring business. Before Walker could take his son to another location, his son urinated in his pants. Walker, who is an African-American, filed suit on the authority of 42 U.S.C. § 1981 seeking damages for "racial prejudice." According to the complaint, Walker and his son "were denied the use of the Defendant's restroom facilities that white customers of Defendant were permitted to use. Accordingly, Plaintiffs have been denied the equal benefit of facilities afforded to and enjoyed by white citizens." Walker sought damages for his son and himself for "mental anguish, pain and suffering, bodily injury, loss of capacity for the enjoyment of life, embarrassment, humiliation, loss of reputation, lost opportunities, and the loss of other emoluments."
The matter proceeded to a jury trial. At trial, Walker testified as to being denied the use of the restroom on behalf of his young son and the embarrassment he suffered as a result. He testified that his son was hesitant to use a public restroom thereafter. Walker's teenaged daughter, who was with her father at Cash Register when access to the restroom was denied, also testified that her father was pained and embarrassed by the incident. Walker called another African-American, Ivery Guiton, who testified that, while he was *68 allowed to use the restroom at Cash Register, he heard an employee make a derogatory remark under her breath when restroom access was requested. Another witness for the plaintiff, a former employee for Cash Register, testified that a decision was made by the office manager to restrict access to the business' restroom to employees only, but she saw this manager give access to a white customer once. Another former employee, Margo Nicholson, who worked at Cash Register for approximately five years, testified that she once saw a white customer being granted access to the restroom.
The executive manager of Cash Register testified that several employees came to him with the request of closing the restroom to members of the public because it became too arduous to keep the lone restroom clean during the day given the volume of customers. There was no written policy adopted. Instead, the door to the restroom was locked, and the officer manager and another employee were given keys. The employees were told that should someone other than an employee seek access to the restroom, he or she was to be told that the business did not have a public restroom. The executive manager admitted that it was probably true that employees would decide under what circumstance an exception would be made.
The office manager testified that the request to close the restroom to the public was made by several Cash Register employees, and thereafter, white as well as black customers were denied access. She agreed, though, that on an individual basis an employee could make an exception.
Walker called another former employee of Cash Register who testified that during her employment she saw some white customers being granted access to the restroom. She came to work at Cash Register approximately a year and half after Walker was denied access to the restroom.
At the close of the plaintiff's case, the trial court granted a directed verdict as to the claim made on behalf of Walker's son. The claim of the senior Walker was to be submitted to the jury. The defense called a former employee who testified that the "general policy" at Cash Register was "just to try to limit the use of customers using the bathroom, primarily because they abused their right and made a very large mess of a very, very small room, and made it very difficult for employeesall of which that was to be used for primarily difficult to maintain." The witness added that Cash Register could serve between 100 and 200 people per day. While at Cash Register, he granted an exception to the restroom policy when he allowed an African-American access; she was approximately eight months pregnant and had been waiting in the Cash Register offices a long time.
The jury returned a verdict in favor of the defendant. Thereafter, the trial court took up the motion for attorney's fees and costs filed by Cash Register. By this motion Cash Register sought fees as a prevailing party under 42 U.S.C. § 1988(b), which authorizes fees to the prevailing party in an action filed pursuant to 42 U.S.C. § 1981. Cash Register also sought to recover attorney's fees and costs from Walker as well as plaintiffs' counsel pursuant to section 57.105(1), Florida Statutes.
At the conclusion of the hearing on the motion for attorney's fees and costs, the trial court granted the motion explaining:
I'm going to grant the defendant's motion for costs and fees under two theories. One, under 42 U.S.C.1988, I believe, the prevailing party is entitled to an award of fees. And I don't think that failure to make such a claim in the answer is a bar to awarding the fees. I'm *69 also going to grant 57.105 fees. I do find that that case was utterly frivolous. I think the case was unreasonable. It was without foundation. And quite frankly, I think the case was absurd.
This was a man who was claiming severe mental anguish because his two-year-old son wet his pants after he couldn't go to the bathroom. First of all, that's what two-year-olds do, they wet their pants. If you're taking a two-year-old someplace, you pretty much have to take something with you or make provisions for appropriate stops.
And then during the testimony about these damages he suffered, his daughter was so coached, so obviously coached she couldn't even tell you what humiliation was. She said her father had been completely humiliated by the process, by the circumstance and then had no idea what humiliation meant.
To tell you the truth, this was one of the most absurd cases I've seen. And surely the plaintiff nor his son suffered. They didn't suffer any kind of economic damages. They didn't have any medical expenses, no property damages. They, quite frankly, didn't even have damages for washing that little boy's underwear. So I am going to grant fees under 1988 as well as 57.105.
In its written order, the lower court found that the plaintiff, "and certainly his attorney," knew or should have known that a cause of action for emotional damages was not supported by the material facts. More particularly, the lower court stated in the written order:
Plaintiff's counsel should have known that a claim for damages on behalf of a two year-old child who wet his pants did not present a valid claim for mental anguish. That a two year-old child accompanying a parent on a day of errands could wet his pants is so common in occurrence that an award of damages for such an incident would be patently absurd and not sustainable. A claim for the emotional damages for having to endure the anxiety and emotional trauma of observing your two year-old child wet his pants is not a valid claim. That is what two year-old's do: When it's time to go, they go. A jury of reasonable people could not have found that a parent would be humiliated by such an occurrence.
On appeal, Walker argues that an award of attorney's fees and costs under section 57.105(1) is improper because Cash Register failed to give 21 days' notice as required by section 57.105(4), which provides that a
motion by a party seeking sanctions under this section must be served but may not be filed or presented to the court unless, within 20 days after service of the motion, the challenged paper, claim, defense, contention, allegation, or denial is not withdrawn or appropriately corrected.
Further, Walker asserts on appeal that attorney's fees should not have been awarded because the instant case was not frivolous, irrespective of the trial court's personal views about the case. Finally, Walker argues that, because Cash Register never specifically pled entitlement to fees under 42 U.S.C. § 1988, fees were not awardable in the instant case, citing Stockman v. Downs, 573 So.2d 835 (Fla.1991). He adds that simply losing a civil rights case does not render the case patently frivolous and a civil rights plaintiff is not at risk of owing fees to the opposing party unless the case is patently frivolous. See Christiansburg Garment Co. v. Equal Employment Opportunity Comm'n, 434 U.S. 412, 421, 98 S.Ct. 694, 54 L.Ed.2d 648 (1978).

*70 Section 57.105(1)

A trial court's award of section 57.105 fees is reviewed pursuant to an abuse of discretion standard. See Gahn v. Holiday Prop. Bond, Ltd., 826 So.2d 423 (Fla. 2d DCA 2002). Generally speaking, attorney's fees statutes should be strictly construed. See, e.g., Dade County v. Pena, 664 So.2d 959 (Fla.1995).
Section 57.105 authorizes an award of attorney's fees to be paid in equal measure by a losing party and that losing party's counsel when counsel knew or should have known that a claim or defense when initially presented or before trial was not supported by the material facts necessary to support such a claim or defense or would not be supported by the application of the controlling law to such facts. Previously, section 57.105 allowed for the award of fees when there was a complete absence of justiciable issue of either law or fact raised by the losing party. In 1999, the statute was amended to allow for an award of attorney's fees when a claim, pleading or other filingas opposed to the entire caseis without merit. See Bridgestone/Firestone, Inc. v. Herron, 828 So.2d 414 (Fla. 1st DCA 2002); Mullins v. Kennelly, 847 So.2d 1151 (Fla. 5th DCA 2003).
Subsection (4) of section 57.105 provides a "safe harbor" from the extended reach of the revised statute. This subsection provides that a "party" seeking sanctions under this statute must first give the opposing party notice of the intent to seek such a sanction so that a "challenged paper, claim, defense, contention, allegation, or denial" might be corrected or withdrawn. This subsection has been construed as not applying where a court orders 57.105 sanctions on its own motion. See Schmigel v. Cumbie Concrete, 915 So.2d 776 (Fla. 1st DCA 2005).
The safe harbor provision of subsection (4) became effective July 1, 2002. See Ch. 2002-77, § 1-2, at 908-09, Laws of Fla. The primary purpose of section 57.105(4) is to give a pleader a last clear chance to withdraw a frivolous claim or defense within the scope of subsection (1) or to reconsider a tactic taken primarily for the purpose of unreasonable delay under subsection (3). Maxwell Bldg. Corp. v. Euro Concepts, LLC, 874 So.2d 709, 711 (Fla. 4th DCA 2004).
In Ganz v. HZJ, Inc., 605 So.2d 871 (Fla.1992), the supreme court held that a claim for attorney's fees on the authority of section 57.105 need not be pled before the conclusion of a case. The Ganz court explained:
It is extremely difficult, if not impossible, for a party to plead in good faith its entitlement to attorney's fees under section 57.105 before the case is ended. We agree with the Third District's observation in Autorico, Inc. v. Government Employees Insurance Co., 398 So.2d 485, 487-88 (Fla. 3d DCA 1981):
There is certainly no way for a litigant to know in advance whether the adverse party will raise nothing but frivolous issues in a civil case and, therefore, to plead in good faith its entitlement to attorney's fees under Section 57.105, Florida Statutes (1979). Indeed, we think it is best to presume good motives on the part of one's adversary even on what appears to be an open and shut case. It is only after the case has been terminated that a sensible judgment can be made by a party as to whether the adverse party raised nothing but frivolous issues in the cause, and, if so, to file an appropriate motion, as here, seeking an entitlement to said attorney's fees under Section 57.105, Florida Statutes (1979). *71 605 So.2d at 872-873. Ganz, however, was decided before subsection (4) was added, and it is not evident that it can be reconciled with subsection (4).
Cash Register has argued on appeal that the safe harbor provision is inapplicable here because the trial court awarded attorney's fees on its own motion. See Schmigel. A review of the record, however, clearly shows that this was not the case. Nevertheless, the order is affirmable on another basis. See Robertson v. State, 829 So.2d 901 (Fla.2002)(explaining that under the "tipsy coachman" rule, an appellate court is to affirm a trial court that "reaches the right result, but for the wrong reasons" so long as there is any basis which would support the judgment in the record).
As noted, subsection (4) became effective on July 1, 2002. See Ch. 2002-77, § 1-2, at 908-09. The instant complaint was filed on June 11, 2002. The act of denying Walker and his son use of the restroom was alleged to have occurred on December 31, 2001. Thus, any application of subsection (4) to the instant case would be retroactive. As a general rule, procedural changes in the law are applied retroactively, while substantive changes are applied prospectively only. See Environmental Confederation of Southwest Florida, Inc. v. State, 886 So.2d 1013, 1017 (Fla. 1st DCA 2004) (explaining that in the absence of clear legislative intent otherwise, the general rule is that procedural statutes apply retroactively while substantive statutes apply prospectively). The supreme court has held that "rights to attorney's fees granted by statute are substantive rather than procedural." Moser v. Barron Chase Sec., Inc., 783 So.2d 231, 236 (Fla.2001), citing with approval, U.S. Sec. Ins. Co. v. Cahuasqui, 760 So.2d 1101, 1107 (Fla. 3d DCA 2000); see also Timmons v. Combs, 608 So.2d 1, 2-3 (Fla. 1992)("it is clear that the circumstances under which a party is entitled to costs and attorney's fees is substantive"), and Leapai v. Milton, 595 So.2d 12 (Fla.1992).
The Fifth District has held that the broad changes made in 1999 to section 57.105 do not have retroactive effect. See Airtran Airways, Inc. v. Avaero Noise Reduction Joint Venture, 858 So.2d 1232, 1233 (Fla. 5th DCA 2003)("We have held recently that the 1999 version of section 57.105 applies to actions taken, positions maintained or papers filed subsequent to October 1, 1999," the effective date of the statute); Mullins v. Kennelly, 847 So.2d 1151 (Fla. 5th DCA 2003). The Third District has held similarly. See Bisson v. Arellano, 844 So.2d 648 (Fla. 3d DCA 2003).
While the court in Maxwell Building Corp. v. Euro Concepts, LLC, 874 So.2d at 711, was not considering retroactive application of subsection (4), the court did describe subsection (4) as "a procedural change" to the statute. We hold, to the contrary, that subsection (4) is a substantive addition. Subsection (4) does more than require the giving of notice. It creates an opportunity to avoid the sanction of attorney's fees by creating a safe period for withdrawal or amendment of meritless allegations and claims. The withdrawal or amendment of a claim, allegation or defense could substantively alter a case. Compare, Stolzer v. Magic Tilt Trailer, Inc., 878 So.2d 437 (Fla. 1st DCA 2004)(holding that statutory amendment to Chapter 440, Florida Statutes, that allowed employer/carrier 30 days, rather than 14 days, within which to provide benefits before being responsible for payment of attorney fees, was substantive change to statute, and thus amendment could not be applied retroactively). Because we conclude that the safe harbor provision of subsection (4) is a substantive change, we *72 hold that it does not have retroactive application and, therefore, could not be applied to the instant case.
As for Walker's argument that his claim was not frivolous, we defer to the trial court's evaluation of the evidence. While it is certainly true that the trial court, in passing on the motion for attorney's fees and costs, did discuss at length that lack of proof of damages, the trial court also found no merit to the cause of action itself. Our review of the trial testimony does not show that the trial court abused its discretion in finding that an award under section 57.105(1) was warranted.

42 U.S.C. § 1988
As a general rule, a party who is entitled to attorney's fees must plead for attorney's fees. Stockman v. Downs, 573 So.2d 835 (Fla.1991). There are recognized exceptions. A party need not plead for attorney's fees if the opposing party waives the necessity to do so, id. at 838, or if the basis for an award of attorney's fees is an offer of judgement, see Tampa Letter Carriers, Inc. v. Mack, 649 So.2d 890 (Fla. 2d DCA 1995), disapproved on other grounds, MX Investments, Inc. v. Crawford, 700 So.2d 640 (Fla.1997). As explained above, in the case of section 57.105 fees, Ganz created another exception to the Stockman rule. Ganz, however, has not been applied beyond fees awarded under section 57.105.
The Stockman rule continues to be applied strictly. In Callaway v. City of West Palm Beach, 674 So.2d 921 (Fla. 4th DCA 1996), it was held that rule set forth in Stockman v. Downs specifically applies to attorney's fees sought under 42 U.S.C. § 1988. See also Precision Tune Auto Care, Inc. v. Radcliffe, 815 So.2d 708, 712 (Fla. 4th DCA 2002)("Stockman is to be read to hold that the failure to set forth a claim for attorney fees in a complaint, answer, or counterclaim, if filed, constitutes a waiver."). Given the Stockman rule, the award of fees under 42 U.S.C. § 1988 was erroneous because Cash Register did not plead entitlement to fees under that statute.
Accordingly, the award of attorney's fees and costs under 42 U.S.C. § 1988 is REVERSED, the award under section 57.105(1) is AFFIRMED, and the case is REMANDED to the trial court; further, we certify conflict with Maxwell Building Corp. v. Euro Concepts, LLC.
BROWNING, C.J., and WOLF, J., concur.